**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
BRIAN J. SNYDER, M.D., and BRIAN
JEFFREY SNYDER M.D. P.C.,

                                    *Plaintiffs*,

                                                                    **MEMORANDUM**
                                                                    **AND ORDER**
              -against-                                              24-cv-06911 (JMW)


NEUROLOGICAL SURGERY PRACTICE OF
LONG ISLAND, PLLC and NSP MANAGEMENT
SERVICES OF LONG ISLAND, INC.,

                                    *Defendants*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**A P P E A R A N C E S:**

  Brian T. Belowich, Esq.
  Kerry E. Ford, Esq.
  Gregory A. Blue, Esq.
  **Lachtman Cohen & Belowich LLP**
  1133 Westchester Avenue, Suite N-200
  White Plains, NY 10604
  *Attorneys for Plaintiffs*

  Marianne Monroy, Esq.
  John Kealey, Esq.
  Andrew Leslie Zwerling, Esq.
  **Garfunkel Wild P.C.**
  111 Great Neck Road
  Great Neck, NY 11021
  *Attorneys for Defendants*

**WICKS**, Magistrate Judge:

     Plaintiffs Brian J. Synder, M.D. and Brian Jeffrey Snyder, M.D., P.C. (collectively,

"Plaintiffs") bring this action against Defendants Neurological Surgery Practice of Long Island

("NSP") and NSP Management Services of Long Island, Inc. ("NSP Management")

(collectively, "Defendants"), alleging six separate causes of action for: (i) violations of the

Employee Retirement Security Income Act of 1974 ("ERISA") ("Count I"), (ii) breach of an employment agreement and breach of the covenant of good faith and fear dealing ("Count II"), (iii) declaratory judgment ("Count III"), (iv) breach of a stock purchase agreement and Employee Stock Ownership Plan ("ESOP") Note ("Count IV"), (v) breach of a retainer agreement and executive employment agreement ("Count V"), and (vi) breach of an operating agreement ("Count VI"), arising out of their employment for the Defendants.  (*See* generally, ECF No. 21.)[1]

Defendants requested a pre-motion conference seeking leave to file a motion to dismiss all Counts asserted in the Amended Complaint. (*See* ECF Nos. 18, 25.) The Court granted Defendants' requests and waived the pre motion conference requirement, setting a briefing schedule on the anticipated motion to dismiss the Amended Complaint. (*See* Electronic Orders dated 12/06/2024 and 01/21/2025.)  Defendants simultaneously moved to stay discovery pending the outcome of their anticipated motion to dismiss (ECF No. 26) , which is opposed by Plaintiffs (ECF No. 27).  For the reasons that follow, Defendants' Motion to Stay Discovery (ECF No. 26) is **GRANTED** *in part* and **DENIED** *in part*.

## BACKGROUND

### I.    *Factual Background*

Plaintiff Snyder worked as a neurosurgeon at Neurological Surgery, P.C. d/b/a NSPC Brain & Spine Surgery since 2008. (*See* ECF Nos. 1, 21.)  In July 2009, Snyder became a shareholder of NSPC. (ECF No. 25 at 4.)  On December 2020, NSPC created an Employee Stock Ownership Plan, which Plaintiffs allege is a type of employee benefit plan administered under ERISA. (*Id.*)  The employees' interests in the ESOP trust vest according to a schedule based on the employees' years of service with the company and become payable in the form of cash *when*

---

[1] Plaintiffs added Counts III through VI in their Amended Complaint. (*See* ECF Nos. 1, 21.)

*an employee leaves the company*. (*Id.* at 4.)  The ESOP became effective as of January 1, 2020, and had a six-year vesting schedule beginning at the same time. (*Id.*)  Section 4.2 of the NSP ESOP stated:

> To the extent a Participant's Account balance has not previously become fully Vested, if the Participant ceases to be an Eligible Employee as a result of death or Disability, the Participant's Account balance shall become one hundred percent (100%) Vested.

(*Id.*)

In order for this transaction to be effective, NSPC merged with NSP and Plaintiffs' shares in NSPC were converted into "membership units" in NSP which were transferred to NSP Management. (ECF No. 25.)  This transaction included NSP selling Snyder's ownership in NSP to Snyder P.C. for total consideration of "$8,107,142.86, including a cash payment of $3,400,000 million and an ESOP note in the principal sum of $4,707,142.86." (*Id.* at 4-5.)  Plaintiff, through his corporation, was "retained" to provide medical services to NSP's patients, and Plaintiff also entered into the Executive Employment Agreement with NSP Management. (*Id.* at 5.)  After the transaction was successful, Snyder P.C. acquired a 7.14% membership interest in NSP. (*Id.* at 7.)

Two months after the ESOP transaction closed, Snyder was diagnosed with Stage IV lung cancer. (*Id.*)  Plaintiffs allege that as a result of their medical condition, they had a disability within the meaning of the NSP ESOP. (*Id.*)  Snyder has been battling Stage IV lung cancer since February 2021. (*Id.*)  Plaintiffs then allege that they were intimidated and harassed due to their medical condition. (*Id*.)  On or around July 3, 2023, Defendants removed Synder P.C. as a member of the NSP and told Snyder he would become an employee of NSP without any ownership interest in the company. (*Id.* at 9.)  Defendants also tried to terminate the Retainer

Agreement and Executive Employment Agreement by making him sign a new Employment Agreement.[2]

Snyder was terminated on August 13, 2024, under the Employment Agreement's no-cause provision (9(c), and, in the same termination notice, it stated that the decision to fire him was "based on financial and operational considerations related to low productivity/revenue levels." (*Id.* at 14.)  Plaintiffs allege that this makes his firing a "for-cause termination" that would be controlled by Section 9(a)(xii) of his Agreement, which requires the employer to grant the employee three months to "cure any quality or quantity issue so raised."  (*Id.* at 14.)  In effect, Plaintiffs allege that they were wrongfully terminated to prevent their ESOP shares from fully vesting due to their disability status. (*Id.* at 14-15.)  Plaintiffs seek to recover payments and benefits in connection with the ESOP, and assert that Defendants deprived Snyder of the right to receive those payments and benefits by wrongfully terminating his employment without warning. (*Id.*)  Plaintiffs further assert they are unable to seek new employment due to a restrictive covenant that prevents them from practicing medicine. (*Id.* at 2.)

As stated, Plaintiffs assert six causes of action all loosely tied to their termination and the benefits they were meant to receive after being terminated:

> (i)　　Plaintiffs seek damages under §502 and §510 of the Employee Retirement Security Income Act of 1974 (ERISA) together with attorneys' fees and expenses.[3]

---

[2] Plaintiffs allege that their participation as a member of NSP was never effectively terminated given that Section 10.2 of the Operating Agreement provides that "each Retainer Agreement will provide only for termination by [NSP] with cause unless the economic conditions in the community require reconsideration and then any change in the Retainer Agreements will bind all Members. (*Id.* at 10.)

[3] ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(b) provides "that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;" ERISA Section 510, 29 U.S.C. § 1140, provides that "it shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this title, section 3001 [29 U.S.C. §

(ii)     Plaintiffs seek damages incurred as a result of the breach of the Employment Agreement dated July 4, 2023.

(iii)    Plaintiffs seek a declaratory judgment finding that the restrictive covenant in their Employment Agreement is unenforceable.

(iv)     Plaintiff seek damages incurred as a result of the breach of both a Stock Purchase Agreement ("SPA") dated December 23, 2020 and the ESOP Note.

(v)      Plaintiffs seek damages incurred as a result of the breach of a Restated Retainer Agreement dated December 23, 2020, and an Executive Employment Agreement dated December 23, 2020.

(vi)     Plaintiffs seek damages incurred as a result of the breach of an Amended and Restated Operating Agreement dated December 23, 2020 (Operating Agreement).

*See generally* ECF No. 21.

## II.    *Procedural History*

Plaintiffs commenced the instant action on October 1, 2024. (ECF No. 1.)  On December 3, 2024, Defendants requested a pre-motion conference leaving leave to move to dismiss Counts I through III of the Complaint. (ECF No. 18.)  The undersigned granted the motion and waived the pre motion conference requirement, setting a briefing schedule on the anticipated motion to dismiss. (Electronic Order dated 12/06/2024.)  Plaintiffs filed their Amended Complaint on December 19, 2024, asserting an additional three Counts. (ECF No. 21.)  On January 16, 2025, Defendants filed a pre motion conference letter, seeking leave to move to dismiss the balance of the claims of the Amended Complaint, and a Motion to Stay Discovery pending the Court's decision on Defendants' anticipated motion to dismiss. (ECF No. 25, 26.)  The undersigned waived the pre motion conference requirement, and directed the parties to comply with the previously set briefing schedule with respect to briefing the anticipated motion to dismiss Counts

---

1201], or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this title, or the Welfare and Pension Plans Disclosure Act."

III through VI. (Electronic Order dated 01/21/2025.)  Plaintiffs filed their opposition to the
Motion to Stay Discovery on January 28, 2025. (ECF No. 27.)

**III**.     ***The Parties' Contentions***

    **A.**     ***Defendants' Motion to Stay***

*First*, Defendants argue that discovery should be stayed since Plaintiff's claims are likely
be dismissed because: (i) Snyder P.C. lacks standing to assert any cause of action given it is not
party to the underlying agreements, (ii) the filing of this suit violates Synder's Employment
Agreement's requirement that such disputes be submitted to arbitration; and (iii) Plaintiffs'
claims otherwise fail on the merits. (ECF No. 26.)

*With respect to Count I*, Defendants claim that Plaintiffs, both in their corporate form and
natural personhood, cannot bring an ERISA claim against them because corporations are not
individuals under ERISA, and Snyder was not an "eligible employee" given that the plan only
"provides benefits to employees of NSP Management." (ECF No. 18 at 2.)  Defendants argue
that Synder was not an eligible employee since his Employment Agreement lists Neurological
Surgery Practice of Long Island as his employer – not NSP Management. (*Id.*)  Defendants
contend that Snyder executed an IRS 1042 election when he sold his shares to the Defendants,
which, under the terms of the ESOP, would prohibit him from receiving employee benefits.[4] (*Id.*)
Defendants also claim Plaintiff failed to exhaust administrative remedies available under the
ESOP prior to commencing this suit.[5] (*Id.* at 3.)  Lastly, Defendants argue that Plaintiffs' claims

---

[4] ESOP §3.9 states: "(a)(i)("No portion of this Plan attributable to Corporation Stock acquired by this Plan
in a sale to which Code 1042 applies may accrue or be Corporation Stock acquired by this Plan in a sale
to which Code 1042 applies may accrue or be allocated…to any plan maintained by the Employer for the
benefit of…any taxpayer who makes allocated...to any plan maintained by the Employer for the benefit
of...any taxpayer who makes an election under Code 1042(a) with respect to Corporation Stock.") (*Id.* at
2-3.)

[5] Section 11.9 of the ESOP Note states: "For all litigation of disputes or controversies which may arise

for interest and refinancing distribution payments are not proper under ERISA because they are not provided by an employee benefit plan.[6] (*Id.*)

     *With respect to Count II*, Defendants argue that Plaintiffs' breach of contract claim should fail because Snyder was not fired for cause, and, therefore, there was no need for them to provide him with a longer notice period and an opportunity to cure. (ECF No.18 at 3-4.) Defendants also argue that since the contract was terminable at will, Plaintiffs were precluded from asserting claims for breach of the covenant of good faith and fair dealing. (*Id.* at 4.) Defendants identify that Snyder is presently accepting total disability benefits, and "therefore, cannot work or provide employment services." (ECF No. 25 at 7.)

     *As to Count III*, Defendants argue that declaratory relief is inappropriate as no actual controversy exists. (ECF No. 18 at 4.) Defendants maintain that since Plaintiffs expressly agreed to their restrictive covenants and received consideration for such agreements, those restrictive covenants are enforceable. (*Id*. at 4-5.)

     *With respect to Count IV*, Defendant asserts that repayment of the ESOP Note was contingent upon continued employment with the Practice – thus, when Snyder were fired, all debts owed to him were "immediately forgiven and the Corporation's debt to the Noteholder [was] immediately discharged." (ECF No. 25 at 3.) Defendants identify that according to the terms of the ESOP Note, the borrower is NSP Management Services of Long Island, Inc. (the Defendants) and the Noteholder is Snyder, personally. (ECF No. 1, Exhibit C, at 198.)

---

out of or in connection with this Plan . . . each party waives trial by jury and hereby consents to the jurisdiction of the courts of the State of New York in Hempstead, New York" and a participant "may not bring a legal action against the Plan . . . until [they have] followed the applicable claims procedures and exhausted the . . . administrative remedies available under the plan." (ECF No. 21, Exhibit A at 108.)

[6] This relates to the Stock Purchase Agreement and Promissory Note.

*As to Count V*, Defendants argue that the Retainer and Executive Employment Agreements were extinguished upon Plaintiffs' removal as a member of the practice. (ECF No. 25 at 4.) Defendants contend this claim should fail because the Employment Agreement dated July 3, 2023, superseded the Executive Employment Agreement and Retainer Agreement, as "each agreement addresses the same subject matter – Synder's employment with the Practice and all affiliates." (*Id*. at 4.) Defendants argue that Plaintiffs were aware of this given that the contract stated that their "participation as a Member of the [Practice] and Retainer agreement with [the Practice] terminated, effective July 3, 2023." (*Id*. at 4.) *Finally*, Defendants argue Count VI fails because Plaintiffs willingly agreed to terminate the retainer agreement when they signed the Employment Agreement dated July 3, 2023. (ECF No. 25 at 5.)

*Second*, apart from arguing the merits of the motion to dismiss, Defendant argues the breadth of discovery sought by Plaintiffs favors a stay. Defendants predict that Plaintiffs will issue broad discovery demands for business records, documents, and testimony given that the allegations span 15 years and involve "numerous complex corporate transactions." (ECF No. 26 at 1.) Defendants emphasize that Plaintiffs have already identified ten witnesses in their initial disclosures. (*Id.*) Defendants argue that responding to voluminous discovery requests prior to the Court's ruling on the motion to dismiss would be wasteful. (*Id.* at 2.) Defendants further express concern that prepping multiple physicians for their depositions would "unnecessary[ily] impact patient care." (*Id.* at 3.)

*Third*, Defendants argue that since they are only seeking a stay of discovery while their anticipated motion to dismiss is pending, the stay would not prejudice the Plaintiffs given that it would be vacated once the Court rules on their anticipated motion. (ECF No. 25 at 4.)

B.    *__Plaintiffs' Opposition__*

In their Response in Opposition, Plaintiffs first argue that Defendants' anticipated motion to dismiss is not likely to be granted such that a stay is not warranted. Plaintiffs argue that Snyder P.C. has standing because they are asserting ERISA violations and a breach of the Operating Agreement. (ECF No. 27 at 3.)  Plaintiffs contend that Snyder P.C. is a party to the Retainer Agreement and Operating Agreement granting it standing to sue. (*Id.*)  Plaintiffs further argue that Defendants' arbitration claims fail because one of Plaintiffs' claims – the breach of the Stock Purchase Agreement – provides that disputes will be heard in federal or state court, not in arbitration proceedings.[7] (*Id.* at 3.)  Plaintiffs also argue that this Court has exclusive jurisdiction over his ERISA claims and supplemental jurisdiction over their declaratory judgment claim.[8] (*Id.*)

*With respect to Count I*, Plaintiffs claim they sufficiently assert that they are eligible employee under the NSP ESOP and argue their allegations must be accepted as true in deciding a motion to dismiss. (ECF No. 27 at 4.)  Plaintiffs also argue that the execution of an IRS 1042 election raised by the Defendant is based on a document "which is not referenced in or integral to the Amended Complaint and is not properly before this Court on a pre-answer motion to dismiss." *(Id.* at 4.)[9]  Lastly, Plaintiffs assert that the Defendants are misconstruing their ERISA allegations by claiming that they are seeking interest and refinancing distribution payments –

---

[7] Section 7.7 of the Stock Purchase Agreement states: "This [SPA] shall be construed and interpreted and the rights of the Parties . . . shall be governed by the internal laws of the State of New York . . . to the extent not pre-empted by ERISA. The Parties hereto hereby consent to: (a) the non-exclusive jurisdiction of the courts of the State of New York and any federal court sitting in New York, New York . . . ."

[8] Plaintiffs did not respond to Defendants' arguments that they failed to exhaust administrative remedies available under the ESOP agreement. (*Id.*)

[9] The issue with this argument is that the IRS 1042 execution issue is explicitly mentioned in section 3.9 of the NSP ESOP. (ECF No. 21, Exhibit A, at 49.)

Plaintiffs allege they are only seeking to recover benefits due "under the NSP ESOP, including the Vested Percentage of his Account Balance, which became fully vested" when they became disabled. (*Id.*)

*With respect to Count II*, Plaintiffs claim that Defendants are ignoring their allegations by claiming that Snyder was let go without cause. Plaintiffs primarily argue that Defendants, in effect, fired Snyder for cause and failed to provide him with notice or an opportunity to cure. (ECF No. 27 at 4-5.) *As to Count III*, Plaintiffs argue that the restrictive covenant warrants judicial scrutiny beyond simple contract principles and that such "fact-specific determinations" are not properly considered this early in a case. (ECF No. 27 at 5.) *With respect to Count IV*, Plaintiffs argue that since Synder was improperly terminated, Defendants are obligated to repay the ESOP note. (ECF No. 27 at 5-6.)

*As to Count V*, Plaintiffs argue that their Employment Agreement dated July 3, 2023 did not extinguish or supersede the Retainer and Executive Employment Agreement because contract law dictates that subsequent contracts "not pertaining to precisely the same subject matter will not supersede an earlier contract unless the subsequent contract has definitive language indicating it revoke, cancels, or supersedes that specific prior contract." (ECF No. 27 at 6.) Plaintiffs maintain that the language in the contract is insufficient given that it only mentions the retainer agreement in passing, and it does not mention the Executive Employment Agreement. [10] (*Id.*)

*Second,* Plaintiffs argue a stay is not appropriate here given the breadth of discovery sought. Plaintiffs contend that the Defendants are exaggerating the breadth of discovery given that their discovery requests have not been served and document discovery has not begun, as of

---

[10] Plaintiffs reiterate previous arguments made with respect to Count VI.

the writing of their opposition. (ECF No. 27.)  Plaintiffs claim that Defendants' neurosurgeons will not be taken away from their duties until after the decision on the motion to dismiss has been made, if the parties proceed with discovery in accordance with the Scheduling Order. (*Id.* at 8.) *Third*, Plaintiffs assert that they will be prejudiced from a stay because Plaintiff Snyder has Stage IV lung cancer, and his claims have merit and are likely to survive a motion to dismiss. (ECF No. 27 at 1.)

## MOTION TO STAY: *THE LEGAL FRAMEWORK*

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Thomas v. N.Y. City Dep't of Educ.*, No. 09-CV-5167, 2010 WL 3709923, at *2 (E.D.N.Y. Sept. 14, 2010) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  The mere filing of a dispositive motion, in and of itself, does not halt discovery obligations in federal court.[11]  That is, a stay of discovery is not warranted, without more, by the mere pendency of a dispositive motion.  *Weitzner v. Sciton, Inc.*, No.CV 2005-2533, 2006 WL 3827422, at *1 (E.D.N.Y. Dec. 27, 2006).

Rather, the moving party must make a showing of "good cause" to halt discovery. *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006); Fed. R. Civ. P. 16(b)(4) (discovery schedule "may be modified only for good cause and with the judge's consent"); *Ass'n Fe y Allegria v. Republic of Ecuador*, Nos. 98 Civ. 8650 (BSJ), No. 98 Civ. 8693 (BSJ), 1999 WL 147716, at *1 (S.D.N.Y. Mar. 16, 1999) ("Together, these provisions enable the district court to stay discovery where resolution of a

---

[11] Contrast this with New York state court practice which expressly provides for an automatic stay of discovery pending the filing of a dispositive motion.  *See* N.Y. CPLR 3214(b) (automatic stay of "disclosure" upon service of dispositive motion).

preliminary motion may dispose of the entire action.").    In evaluating whether a stay of discovery pending resolution of a dispositive motion, courts typically consider: "(1) the breadth of discovery sought, (2) any prejudice that would result, and (3) the strength of the motion." *Robbins v. Candy Digital Inc.*, No. 23-CV-10619 (LJL), 2024 WL 2221362, at *1 (S.D.N.Y. May 15, 2024) (internal citations omitted).

"Upon a showing of good cause a district court has considerable discretion to stay discovery pursuant to Rule 26(c)." *Al Thani v. Hanke,* No. 20-CV-4765 (JPC), 2021 WL 23312, at *1 (S.D.N.Y. Jan. 4, 2021) (alteration in original) (quoting *Republic of Turkey v. Christies, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018)).  In assessing good cause, courts look to "the particular circumstances and posture of each case." *Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, No. 08 Civ. 2437 (RJS), 2008 WL 11510668, at *2 (S.D.N.Y. June 12, 2008) (quoting *Hachette Distrib., Inc. v. Hudson Cnty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991)).  *Au fond,* the specific facts, circumstances, and context of the case guide the Court in deciding whether discovery should be stayed.  It is against this backdrop that the present motion is considered.

It is with this framework in mind that the Court considers the motion for a stay.

## DISCUSSION

I.    ***The Strength of Defendants' Anticipated Motion to Dismiss***[12]

A.    ***Several Counts Likely Subject to Arbitration***

Defendants request dismissal of all claims asserted by Plaintiffs because this lawsuit violates Plaintiff Snyder's Employment Agreement's requirement that such disputes are subject

---

[12] The Court's consideration and analysis of the arguments set forth in Defendants' anticipated motion to dismiss is purely for purposes of weighing whether a stay should be granted.  This analysis should not in any way be construed as the Court prejudging the merits or predicting the outcome of the motions to dismiss.

to binding arbitration. *See* ECF No. 26 at 2; ECF No. 18 at 2-3. Given the inapplicability of the Federal Arbitration Act to this proceeding, this Court must determine the enforceability of the arbitration under New York state law. *See Islam v. Lyft*, Inc., 524 F. Supp. 3d 338, 359 (S.D.N.Y. 2021) (finding that "the inapplicability of the FAA [under the § 1 exemption] does not render an arbitration [agreement] void when it is otherwise enforceable under state law."); *see also Smith v. Allstate Power Vac*, Inc., 482 F. Supp. 3d 40, 48 (E.D.N.Y. 2020) ("Where the FAA is not applicable, it follows that state arbitration law should be applied...."); *Michel v. Parts Auth., Inc.*, No. 15-cv-5730, 2016 WL 5372797, at *3 (E.D.N.Y. Sept. 26, 2016) ("Even assuming the FAA does not apply, New York state law governing arbitration does apply.").

Under New York law, a court must first make a determination whether the parties have entered into a valid arbitration agreement, *see O'Brien v. Bache Halsey Stuart Shields*, 80 A.D.2d 846, 444 N.Y.S.2d 469 (N.Y. App. Div. 2d Dep't), and, if so, whether the issue sought to be submitted to arbitration falls within the scope of that agreement. *See Rockland Cnty. v. Primiano Const. Co*., 409 N.E.2d 951 (N.Y. 1980) ("*Rockland*"). Where the intention to arbitrate a particular matter is equivocal, a party may not be compelled to proceed to arbitration. *Schenkers Int'l Forwarders, Inc. v. Meyer*, 564 N.Y.S.2d 323 (N.Y. App Div. 1st Dep't 1991).

*First*, the unambiguous language of the Employment Agreement evinces a clear intent to arbitrate disputes. Section 13(a) of Plaintiffs' Employment Agreement, dated July 3, 2023, states that "in the event of a dispute *arising under this Employment Agreement* . . . the dispute *shall* be submitted to binding arbitration under the rules of the American Health Lawyer Association." *See* ECF No. 21, Exhibit I, at 15. Therefore, Defendants appear correct in concluding that those causes of action "*arising under*" the Employment Agreement are likely required to be submitted to arbitration. *But* this does not include *all* causes of action pled by the Plaintiffs.

13

*Second*, this Court must determine whether all six causes of actions fall within the scope of that agreement. *Rockland,* 409 N.E.2d 951 at *8.   Here, all causes of action except for the ERISA Claims (Count I) and the Breach of Stock Purchase Agreement and ESOP Note (Count IV) "fall within the scope" of Snyder's Employment Agreement.  While ERISA claims may be subject to arbitration, *see Murphy v Canadian Imperial Bank of Com.*, 709 F. Supp. 2d 242, 247 (S.D.N.Y) (finding that the Second Circuit has "held that Congress has not evinced an intention to preclude a waiver of judicial remedies for ERISA claims"), the Employment Agreement Snyder signed explicitly carved out the alteration of rights under the pre-existing ESOP agreement:

> Section 5(c) of the Employment Agreement states that nothing set forth in this Agreement shall serve to amend the terms of the financing agreements and promissory notes entered into by the Employee in connection with the employee stock option transaction . . . including, without limitation, Employee's rights to interest payments . . . warrant payments . . . and Employee's rights to refinancing proceeds.

ECF No. 21, Exhibit I, at 6.  The same reasoning applies to the Breach of the Stock Purchase Agreement (hereafter, the "SPA") and ESOP Note claim given that both the SPA and the ESOP note are included in the explicit carveout language of the Employment Agreement.  To find otherwise would be violative of the contractual parties' intent.

All other causes of action fall plausibly within the language of the arbitration agreement. Plaintiffs' breach of employment agreement (Count II) claim falls squarely within the arbitration provision since their claim is entirely based on the Defendants allegedly firing him without following appropriate procedures set out in the agreement. *See* ECF No. 27.  If Count II was not subject to mandatory arbitration, Plaintiffs likely would defeat a motion to dismiss given that there are genuine issues of fact regarding whether their termination was for cause or not for cause.  Plaintiffs' declaratory judgment claim (Count III) declaring his restrictive covenant

14

unenforceable similarly falls within the arbitration bucket given that the restrictive covenant itself is a part of the Employment Agreement Snyder signed. (*Id.*)  Even if this claim was not subject to arbitration, this claim would likely fail because the Defendants have convincingly asserted that the Plaintiffs received sufficient consideration–$3.4 million–and entered *multiple* restrictive covenants willingly. *See* ECF No. 18 at 4.

Plaintiffs' claim for a breach of his Retainer Agreement and Executive Employment Agreement (Count V) also necessarily falls within the arbitration bucket given that Snyder's Employment Agreement covers the same subject matter: the Agreement states he, through his corporate form, is no longer a member of the Company; he is solely referred to as an employee – and, notably, the contract states that his "Retainer Agreement with the Company *terminated*, effective as of July 3, 2023." *See* ECF No. 21, Exhibit I, at 2 (emphasis added).  Even if the Court were to find that the Executive Employment Agreement is not specifically mentioned in the July 3rd agreement and is thus ambiguous, Plaintiff Synder's removal as a member of the company and his title being "employee" cuts against him likely still qualifying as an executive employee of the corporation, especially given that Plaintiffs admit as much in their own Amended Complaint.[13]

Plaintiffs' conclusory statement that the Executive Employment agreement "was never effectively terminated" is not enough to cut against this finding. ECF No. 21 at 10.  Even if this cause of action was likely not subject to arbitration, Defendants are also correct that the Plaintiffs willingly entered into this contract that, by its very terms, terminated the retainer agreement. ECF No. 18.  Plaintiffs' assertion that a subsequent contract cannot supersede an agreement

---

[13] *See* ECF No. 21 at 9 ("Defendants informed Dr. Snyder that Snyder P.C. was being removed as a member of NSP and that [he] would become an employee of NSP without any ownership interest in the company. Defendants also informed [him] "that he was being removed as a member of NSP's Board of Directors.")

unless it has definitive language indicating it revokes prior agreements reinforces Defendants' position since the contract Plaintiffs signed *explicitly* states that the retainer agreement was terminated. *See* ECF No. 25.  Lastly, Plaintiffs' breach of the Operating Agreement claim (Count VI) also falls within the arbitration bucket given that the Defendants convincingly argue this is merely a recycled reiteration of Count V: a breach of his retainer agreement pled under a different cause of action because it allegedly also violated the Operating Agreement. *See* ECF No. 25 at 5. Any claim attached to the alleged breach of the retainer agreement is solidly covered by the terms of the Employment Agreement dated July 3rd, given that this contract terminated the retainer agreement. *See* ECF No. 21, Exhibit I, at 2.  To this end, even if Count VI was not subject to arbitration, it would likely fail due to the superseding employment contract.

Even though certain claims may be subject to arbitration, that does not necessarily mean there will be *no* discovery exchanges or depositions in the arbitration proceeding.  The Agreement mandates arbitration of disputes in accordance with American Health Lawyers Association ("AHLA").  *See* ECF No. 1-10 at § 13.  The Rules of Procedure for Commercial Arbitrations before the AHLA expressly contemplate discovery taking place, leaving the scope to the discretion of the arbitrator.  AHLA Rule 5.5 (eff. Feb. 6, 2025) ("To promote speed and efficiency, the arbitrator, in his or her discretion, should permit discovery that is relevant to the claims and defenses at issue and is necessary for fair resolution of the claim."). Accordingly, whether the claims are litigated here or in an arbitration before AHLA, there is likely to be discovery on the claims and defenses.

**B. *Several Counts Are Likely Survive the Motion to Dismiss***

Generally, to survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When considering a motion to dismiss under 12(b)(6), the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Ashcroft v. Iqbal*, 556 U.S. at 663. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. More is required.

Here, assuming the truth of the allegations as the Court must at this stage, the undersigned finds Plaintiffs have likely stated a claim under ERISA and have successfully alleged a breach of the Stock Purchase Agreement and the ESOP Note as set forth in Counts I and IV of the Amended Complaint. *First*, Plaintiffs allege that they were participants in an Employee Stock Ownership plan and that the benefit plan's language likely entitled them to their fully vested benefits due to their stage IV cancer. *See* ECF No. 21. Such ownership plans are covered under ERISA as eligible plans that are subject to the regulations of the act. *See Henry v. Champlain Enterprises, Inc*., 445 F.3d 610 (2d Cir. 2006). To state a prima facie case of discriminatory discharge for the purposes of section 510, a plaintiff must plead: (i) that he

17

belonged to a protected group under ERISA, (ii) that he was qualified for the pensions, and (iii) that he was discharged or denied employment under circumstances which give rise to an inference of discrimination. *Id*. at 1114–15.

The timing of the discharge and savings by the employer which resulted "are circumstances sufficient to give rise to an inference of discrimination." *Ehrlich v. Howe*, 1992 WL 373266, *4 (S.D.N.Y.) (quoting *Dister*, 859 F.2d at 1115). Additionally, plaintiff does not have to use magic words indicating intent, but only has to use language which gives rise to an inference of intent, an element that can be explored in more detail during the discovery stage of the litigation. *See Roeder v. General Signal Corp.,* 901 F. Supp. 124, 126 (W.D.N.Y.1995) (holding that statement in complaint that defendant "took into consideration" plaintiff's request for pension benefits when firing him was sufficient to support ERISA cause of action prior to discovery stage of proceeding); *Russell v. Northrop Grumman Corp.*, 921 F. Supp. 143, 148 (E.D.N.Y. 1996). Relevant here, an employer is precluded from discriminating against an employee for the purpose of interfering with an employee's exercise of certain rights. *See Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1482 (4th Cir.1996). And, an employer is not permitted to discriminate against an employee for the purpose of interfering with an employee's attainment of certain rights. *Id.* At this stage of the proceeding, Plaintiffs' burden of proof is *de minimis*. *Russell*, 921 F. Supp. at 148.

Plaintiffs plausibly allege that their medical condition was a financial liability to their employer and that the Chair of NSP's Finance Committee even referred to him as "clearly disabled." *See* ECF No. 21 at 8. To allow an employer — that seemingly fired Snyder right before his benefits were going to vest due to his disability—to argue that their former employee is entitled to nothing because of their alleged pressure campaign, would be to reward the

unscrupulous behavior from employers that ERISA was enacted to prevent. *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir.1988) (Section 510 was enacted primarily to prevent "unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.")  Defendants assert that Snyder is not an eligible employee/plan participant given that the ESOP plan is only applicable to employees of NSP Management (ECF No. 18); however, the only reason Plaintiffs were no longer an employee of NSP Management was due to the alleged pressure campaign to force Snyder to sign a new employment contract prior to his benefits vesting due to his disability status. *See* ECF No. 21.

Defendants' claims that Plaintiffs were not eligible employees since they were not members of NSP management is forcefully contradicted by a slide deck that Snyder received on July 23, 2024 – a little more than a year after he executed the employment agreement that removed him as a member of the practice group – detailing the benefits that *the employees of NSP* were entitled to under their ESOP. *See* ECF No. 21, Exhibit K.  The slide deck includes a slide that explicitly states: "Federally regulated under ERISA, which protects plan participants." (*Id.*)  Lastly, Plaintiffs present emails from Defendants' accountant stating "[n]othing new is happening on the ESOP front. *You will be paid every dollar back pay plus ESOP continues to accrue for you*." (emphasis added).  Therefore, construing facts in the light most favorable to Plaintiffs, it is clear that they have made sufficient plausible allegations to likely survive a motion to dismiss under their ERISA claims, as Snyder was never paid the vested percentage of his account balance upon termination, and his termination as an employee of NSP Management may have been entirely predicated on his disability status.

With respect to Count IV, most of the prior analysis is applicable. Plaintiffs have likely sufficiently alleged that they entered into a stock purchase agreement that was part of the ESOP

Note and that they never received any of the money they were owed under such an agreement. *See* ECF No. 21.  Defendants' assertion that repayment of the ESOP Note is expressly a condition on continued employment is immaterial at this stage given that Plaintiffs allege their termination was wrongful and predicated on their desire to avoid repayment of the ESOP Note. *See* ECF No. 25; *see also Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 124 (2d Cir.1991) (noting plaintiff is not compelled to prove his case at the pleading stage).  Analyzing the facts and circumstances set forth *infra*, the Court finds that Defendants have failed to establish the requisite strong showing that Plaintiffs' claims under Counts I and IV would be unmeritorious, such that discovery relevant to Counts I and IV should not be stayed.

**II.**   ***Breadth of Discovery Sought***

At this stage of the litigation, only Rule 26 initial disclosures were exchanged between the parties. *See* ECF No. 27.  Defendants' discovery burden claims, which are entirely based on speculation and a list of 10 witnesses, are not enough to warrant finding that discovery requests would be too burdensome to comply with.  Plaintiff is also correct that Defendants' concern that patient care will be interrupted due to deposition prep is unwarranted given that their depositions would not take place *until after the motion to dismiss is decided*.  *See id.*  The events in this action will likely date back to only November 2020 since the ERISA benefits, the ESOP Note, and the Stock Purchase Agreement were all executed in December 2020.  Thus, this factor weighs *against* granting the stay. *See e.g., Fahey v. Inc. Vill. of Manorhaven,* 22-cv-7041 (KAM) (JMW), 2023 U.S. Dist. LEXIS 25883, at *3 (E.D.N.Y. Feb. 15, 2023) ("Defendants do not sufficiently address the breadth of discovery or the burdens of responding to such discovery. Though the named Defendants in this matter are numerous, the events in this action date back to only mid-2022, which mitigates the breadth and burdens of discovery.")

### III.    *Prejudice Upon the Parties*

Plaintiffs' allegations of prejudice are serious given his medical condition; however, Courts in this Circuit grant short stays that will be lifted upon the decision of a motion to dismiss and "neither unnecessarily delay the action nor prejudice the plaintiffs thereby." *Spencer Trask Software & Info. Servs., LLC v. Rpost Int'l Ltd.*, 206 F.R.D. 367 (S.D.N.Y 2002); *Nat'l Rifle Assn'n of Am. V Cuomo*, 2020 WL 7338588, at *4 (N.D.N.Y. 2020). There does not appear to be any concern that evidence will spoliate or get destroyed given that Defendants are a sophisticated corporate party subject to recordkeeping obligations. However, the serious medical condition in this Court's view cuts in *favor* of denial of the stay.

Considering all the above: (i) the strength of Defendants' anticipated motions to dismiss (*i.e.*, that certain Counts are likely referrable to arbitration under New York law and others are likely to survive a motion to dismiss due to the factual issues surrounding Plaintiffs' termination), (ii) the breadth of discovery, and (iii) the prejudice, the motion to stay discovery is granted in part and denied in part.  The parties are to continue with so-called "paper discovery" and exchange demands and responses while the motion to dismiss is pending.  However, discovery is stayed as to depositions which should await disposition of the underlying motion to dismiss.

### CONCLUSION

For the foregoing reasons, Defendant's Motion to Stay (ECF No. 26) is **GRANTED** *in part* and **DENIED** *in part*. Discovery shall be stayed only with respect to depositions. Otherwise, discovery shall proceed.  To the extent good cause exists to take a particular

deposition (*e.g.*, de bene esse), then a motion should be filed seeking limited relief from the stay.

Dated:          Central Islip, New York,
                February 23, 2025

                                    **S O  O R D E R E D:**

                                    /s/ *James M. Wicks*
                                    JAMES M. WICKS
                                    United States Magistrate Judge